**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Blair Amand Adonis,

Plaintiff,

v.

Commissioner of Social Security Administration,

Defendant.

No. CV-25-03840-PHX-JAT

**ORDER**

Before the Court is Claimant Blair Amand Adonis's appeal of the Commissioner of the Social Security Administration's ("SSA," or "the Commissioner) denial of social security benefits. (Doc. 9). Mr. Adonis's appeal is fully briefed (Docs. 9, 11, 12), and the Court rules. Because the denial failed to adequately explain why the medical evidence was inconsistent with Mr. Adonis's subjective symptom testimony, the Court will reverse and remand that decision.

## I. BACKGROUND

Mr. Adonis applied for Disability Insurance Benefits in March 2022, alleging an onset date in November 2021. (Doc. 8-3 at 24). An Administrative Law Judge ("ALJ") later denied Mr. Adonis's claim for benefits in the decision that the Court reviews today. (*Id.* at 24-38).

Before he could receive benefits, Mr. Adonis needed to show that he is disabled. *See* 42 U.S.C. §§ 423(a)(1)(E). To be considered under a disability, he must be unable to engage in "substantial gainful activity" as a result of a medically determinable physical or

mental impairment. *Id.* § 423(d)(1). This impairment must be severe enough to stop him from engaging in any substantial gainful work, including any of his previous work, within the national economy. *Id.* § 423(d)(2). The ALJ consulted the prescribed five-step sequential process created by the SSA when deciding whether Mr. Adonis was disabled under this standard. (Doc. 8-3 at 25-26); *see* 20 C.F.R. § 404.1520(a)(1).

Step One of the regulatory test determines whether the claimant is engaging in any substantial gainful activity. *Id.* § 404.1520(a)(4)(ii). To pass this step of the analysis, one cannot perform "significant physical or mental activities" that are usually completed "for pay or profit." 20 C.F.R. § 416.972(a)–(b). Here, the ALJ confirmed that Mr. Adonis had not participated in such activity since his alleged onset date. (Doc. 8-3 at 26-27).

Step Two considers if the claimant has a severe "medically determinable physical or mental impairment" or "combination of impairments." 20 C.F.R. § 404.1520(a)(4)(ii). To continue past this step, the given impairment must "significantly limit" Mr. Adonis's "physical or mental ability to do basic work activities." *Id.* § 404.1520(c). The ALJ here found that several of Mr. Adonis's medical conditions qualified as severe physical or mental impairments.[1] (Doc. 8-3 at 27-28).

Step Three asks whether the claimant's impairments match an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). Absent a match, an ALJ examines the claimant's ability to perform certain physical and mental work despite impairment. *Id.* §§ 404.1545(a)(1), 404.1545 (e). That ability is referred to as a claimant's "residual functional capacity" ("RFC"). This examination is based on the record and the entirety of the claimant's impairments (including not severe impairments) that can "affect what [the claimant] can do in a work setting." *Id.* §§ 404.1545(a)(1)–(2).

The ALJ here determined that Mr. Adonis did not have an impairment matched in the Appendix and that he had the requisite RFC to perform sedentary work, albeit with some limitations. (AR at 28-37). In making that finding, the ALJ reviewed the record and

[1] The ALJ decided that the following conditions satisfied Step Two's threshold: gastrocsoleus vs osseous equinus right ankle vs osteochondral defect, right Achilles tendinosis, closed fracture of the right fifth metatarsal bone, right wrist ulnar neuropathy, and bilateral carpal tunnel syndrome. (Doc. 8-3 at 27).

addressed certain pieces of evidence, like statements from medical professionals and Mr. Adonis's own subjective symptom testimony. (*Id.*).

Step Four identifies whether Mr. Adonis's RFC allows for the physical and mental demands of work done "within the past five years that was substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(e). This was the ultimate step in the analysis here; the ALJ decided that Mr. Adonis was capable of performing past relevant work as a sales representative because the job does not require activities precluded by the RFC he had calculated. (Doc. 8-3 at 37-38). The ALJ thus denied Mr. Adonis benefits. (*Id.* at 38).

## II. LEGAL STANDARD

This Court may set aside the ALJ's decision only if it is "based on legal error or not supported by substantial evidence in the record." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). If at least "more than scintilla but less than a preponderance" of relevant evidence reasonably supports the ALJ's decision, an affirmance is proper. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997)). The Court consults the entirety of the record when applying this standard. *Id.* (citing *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2007)).

The ALJ—not this Court—is responsible for drawing logical inferences from the medical record, resolving conflicts in medical testimony, determining credibility, and resolving any ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984)). The ALJ's decision will accordingly be upheld if the relevant evidence is subject "to more than one rational interpretation." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004).

## III. ANALYSIS

Each of Mr. Adonis's arguments are centered around the ALJ's rejection of his own symptom testimony. (Doc. 9 at 12-17). To reject a claimant's testimony about the severity of his reported symptoms, an ALJ must offer "specific, clear, and convincing reasons for

doing so." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). Here, the ALJ determined that Mr. Adonis's reports of the intensity, persistence, and limiting effects of his varied disabilities were "not entirely consistent" with the record. (Doc. 8-3 at 31).

The first of Mr. Adonis's arguments challenges the ALJ's finding that the "objective medical record does not support any restrictions or limitations in excess of those outlined in the RFC." (Doc. 9 at 13 (citing Doc. 8-3 at 31)).[2] He points to his testimony reporting continuous pain in his right foot, lower back, and hands that prevents him completing the work that the ALJ described. (*Id*. at 14); *see* (Doc. 8-3 at 30). In his view, the ALJ cherry-picked contrary evidence and did not explain how that evidence contradicted the testimony concerning pain. (Doc. 9 at 13-15).

Although an ALJ is required to "consider the level of consistency between symptom testimony and the medical evidence," not any inconsistency will doom a claim. *Glanden v. Kijakazi*, 86 F.4th 838, 846-47 (9th Cir. 2023). Rather, the ALJ's reasoning must be "clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). And such clear reasoning must actively justify a denial; the mere summarization of evidence lands far afield from the "specific" reasoning needed to review a decision. *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015).

Here, the Court finds that the ALJ's reasoning simply stated her RFC determination and then listed the varied medical evidence supporting that determination. The ALJ laid out certain evidence from Mr. Adonis's lengthy medical history. (Doc. 8-3 at 32-34 (listing the medical history concerning the physical problems). But noticeably missing from that exhibition is any discussion detailing *why* that evidence did not permit greater limitations given Mr. Adonis's reports of pain. Although the Court might notice statements in the

[2] The ALJ explained that Mr. Adonis could perform sedentary work, but could sit for only seven hours in a workday (and four at a time), stand for only three hours in a workday (and two at a time), walk for two hours in a workday (and one at a time), balance and stoop, and could operate foot controls, climb ramps or stairs, kneel, crawl, and crouch occasionally. (Doc. 8-3 at 29). Mr. Adonis required the use of cane when walking more than two blocks and needed to avoid exposure to intense cold, mechanical hazards, and occupational driving. (*Id*. at 29-30).

presented evidence that would not support the testimony, affirming the denial on that basis would violate the tenet that weighing the evidence is the ALJ's responsibility. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009).

And it is not as if the medical evidence was one-sided. The summary of the medical evidence showed that Mr. Adonis faced challenges that might be read to support his past testimony. For instance, the ALJ noted consistent swelling, a severe limitation of motion in the right ankle, issues with sensation and distal skin, and a host of hand and wrist issues. (Doc. 8-3 at 32-33). But how the ALJ understood that evidence, along with the other evidence, to prohibit more stringent limitations is unclear to the reviewer and the claimant. Based on the foregoing, the Court will grant Plaintiff the relief he seeks, which is remand for a new decision. (Doc. 12 at 5).

Mr. Adonis makes two additional arguments, both also focusing on the evidence the ALJ considered when evaluating the RFC. The first disputes the finding that his ability to look and apply for work is inconsistent with his subjective symptom testimony. (Doc. 9 at 15-16). The second focuses on the finding that taking a bike ride and travelling to Columbia is inconsistent with that testimony. (Doc. 9 at 16-17). Given the Court's disposition about the medical evidence, the Court need not address these arguments further.

Because the summary of the medical evidence and Mr. Adonis's reported activities both contribute to an understanding of his symptoms and a calculation of his RFC, the manner in which the ALJ considers one group of evidence might affect the manner in which she considers the other. *See Hawthorne v. Comm'r of Soc. Sec.*, Case No. 26-cv-00177-RS, 2026 WL 2520247, at *2 (N.D. Cal. Aug. 26, 2026). And determining how these pieces of evidence interact is a job for the factfinder, not this Court. *See Delgadillo v. Kijakazi*, No. 20-56211, 2022 WL 301548, at *1 (9th Cir. 2022).

## IV. CONCLUSION

An ALJ must provide specific reasons for discounting symptom testimony, and the mere listing of evidence after a conclusion cannot provide such specificity. Here, the ALJ

led the Court down an initially discernable path of reasoning regarding why Mr. Adonis's activities were incongruent with his testimony, but then left the Court stranded in a forest of medical evidence without explaining how or why that evidence culminates in a denial. *See Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012).

Voicing that ALJ opinions need not be a "line-by-line exegesis" of testimony and evidence, the Commissioner searched for and presented the medical evidence that the ALJ cited to support his conclusion. (Doc. 11 at 7-8). But absent substantial reasoning in the original decision that leads the Court through the evidence, this song just lures the Court into factfinding or post-hoc rationalization. Because neither adventure is permissible, the Court will instead remand Mr. Adonis's case for another ALJ decision.

Accordingly,

**IT IS ORDERED** that the decision of the Commissioner is reversed and remanded for the issuance of a new decision.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly.

Dated this 27th day of October, 2026.

James A. Teilborg
Senior United States District Judge